## DAILY ET AL. *v.* THE CITY OF COLUMBUS.

PLEADING.—*Exhibits.*—Where the averments of a pleading are contradicted by an exhibit referred to in such pleading, the exhibit will control.

CITY COUNCIL.—*Power to Borrow Money.*—Where a city negotiated her bonds to raise means to construct water-works, and the city treasurer misapplied a part of the funds so realized, leaving debts unpaid on account of such works, it was competent for the city council to issue and sell other bonds to make up such deficiency.

SAME.—*Statutes.*—By the statute of 1871 (Acts 1871, p. 8), the common council of a city is authorized to issue and sell such bonds of the city as, in the discretion of the council, may be necessary to carry out contracts there-

tofore made in and about the construction of water-works, and to fully complete such works; and by the act of March 7th, 1873, it may provide for paying ten per cent. interest on such bonds.

From the Bartholomew Circuit Court.

*S. Stansifer,* for appellants.

*N. T. Carr* and *F. T. Hord,* for appellee.

BUSKIRK, C. J.—This was a proceeding on the part of the appellants, to enjoin the appellee from issuing and selling certain bonds.

The complaint states, substantially, that, on the 24th of September, 1870, the common council of the city of Columbus provided by ordinance for the construction of water-works; that under said ordinance said water-works were completed at a total cost of fifty-three thousand two hundred and sixty-two dollars and forty-four cents, as shown by a report of the water-works committee, which is made a part of the complaint; that the cost of printing bonds, etc., and expenses of selling bonds, being five hundred and twenty-seven dollars and ninety-five cents, was not to come out of that fund; that the council created a fire department, to be operated in connection with the water-works, at a cost of two thousand nine hundred and forty-nine dollars and thirty-eight cents, as shown by said exhibit; that the city, by its ordinance of September 27th, 1870, provided for issuing and selling bonds, to aid in the construction of water-works; that the city sold forty-five thousand dollars of said bonds, and gave to Holly, one of the contractors, a bond for five thousand dollars on his debt; that June 27th, 1871, the city issued bonds for fifteen thousand dollars, to aid in the construction of the water-works, which were sold by said city; that all of said bonds issued and sold amount to sixty-five thousand dollars; that the fire department and water-works were the only species or character of public works in which the city was engaged or connected with; that on the 18th of June, 1873, the city council adopted an ordinance, which is made a part of the complaint, providing for the forms of bonds, etc., and that the city will issue

and sell said bonds unless restrained; prayer for an injunction, etc.

The appellee answered in two paragraphs. A demurrer was sustained to the first and overruled to the second. The appellants elected to abide by the judgment on demurrer to the second paragraph, and final judgment was rendered for appellee.

The error assigned calls in question the correctness of the action of the court in overruling the demurrer to the second paragraph of the answer.

Did the court err in overruling the demurrer?

It states, substantially, that the ordinance authorizing the issue of the bonds sought to be enjoined was regularly and legally adopted by a two-thirds vote of the common council of the city of Columbus, at its regular meeting; that said bonds were sought to be issued for the sole purpose of the construction and completion of said water-works, and to pay debts contracted in their construction; that the city, in the year 1870, began the construction of the water-works to furnish the city with wholesome water, and adopted what is known as the " Holly plan," which consists of a suction pump operated by a steam engine, by which a supply of water is drawn from Driftwood river, and is forced through a series of conducting pipes along the various streets of the city; that the citizens are furnished with wholesome water only through said conducting pipes; that said water-works, on the day of the passage of said last ordinance, had so far progressed that said suction pump, force pump, and engine were provided, and certain mains or pipes were laid and established on parts of Washington, Mechanic, Sycamore, and California streets of said city, running north and south through said city, and also on parts of Vernon, Tipton, Harrison, Jefferson, and Irwin streets, running east and west, by which pipes the citizens of said city residing on said streets were being supplied with wholesome water at the general expense of said city, at and for a mere nominal price per year for the use thereof; but that said water-works, on the day of the passage of said ordinance, were not and are not now completed, in this, that parts of Vernon and

Tipton streets, and all of Walnut, Delaware, Liberty, and North streets, running east and west through said city, and Jackson, Brown, Franklin, Pearl, Chestnut, and Wilson streets, running north and south in said city, are not now, nor were, at the time of the passage of said ordinance, furnished with such conducting pipes, and that the citizens of said city, residing on said streets and parts of streets, were not then, and are not now, supplied with such wholesome water from said works as other citizens of said city are supplied on other streets thereof; that the city of Columbus, at the time of commencing said water-works and continuously since, has intended to lay conducting pipes on the said streets not furnished, as rapidly as the city could procure funds therefor, and has continued to lay the same as demand arose, and the city was able; to aid in constructing said water-works, the city on the 7th of February, 1871, issued bonds for the amount of fifty thousand dollars, which were placed in the treasurer's hands; thereafter the city, knowing that said sum was not sufficient for said works, on the 3d of July, 1871, issued fifteen thousand dollars more of bonds; that forty-eight thousand dollars of said sums were paid out on said works, and on the —— day of September, 1871, the said treasurer refused to pay the orders of said city on said fund, or to disburse the balance of said bonds, to wit, seventeen thousand dollars, and has continuously refused to pay or account for the same; that immediately on the termination of said treasurer's term of office, the city of Columbus instituted suit against said treasurer on his official bond for said money, and said suit is now pending in the Bartholomew Circuit Court, which said treasurer and his sureties are defending, on the ground that they are not responsible for said money, in that the money was placed by the common council in the bank of McEwen & Sons, who became insolvent, and that there is no liability therefor; that at the time of said treasurer's failure to pay over and account for said money, the city took all necessary steps to compel such payment, but knowing the uncertainties and delays of judicial proceedings, and that said money would not be made for some four or five years, and the

city having contracted debts in the construction of said works to the amount of about twelve thousand dollars, and said debts being due and payable, and the city being liable to be sued for the same, and having no other means of raising said money in time to pay said debts and save said city from suits, and judging that a necessity existed for the immediate completion of said works, and having no other means in their control, the common council resolved to issue said bonds mentioned in the complaint.

The principal ground upon which the injunction was asked was, that the city did not owe the amount for which the bonds were being issued. It is averred in the complaint that the water-works had been completed at the cost of fifty-three thousand two hundred and sixty-two dollars and forty-four cents, and an exhibit was referred to and filed with the complaint, showing the cost of water-works and fire department. An examination of the exhibit shows that a mistake has been made either by the pleader or the one who prepared the exhibit. The exhibit only shows the expenses and cost of the water-works up to February 8th, 1872, when it was made, and it appears therefrom that the cost of the water-works alone was sixty-nine thousand eight hundred and sixteen dollars and thirty-nine cents, instead of fifty-three thousand two hundred and sixty-seven dollars and forty-four cents. Add to this the cost of the fire department, two thousand four hundred and two dollars and thirty-eight cents, and service-pipe and pay of superintendent, and an indebtedness of seventy-three thousand and sixty-five dollars and seventy-seven cents is shown. The answer in question shows that other debts have been created since the making of said report, in the extension of the water-works to other parts of the city, and that further expenditures will have to be made for the same purpose. When the averments of a pleading are contradicted by an exhibit referred to in such pleading, we are governed by the exhibit. *Gilmore* v. *The Board, etc.,* 35 Ind. 344.

It also shows that the sum of seventeen thousand dollars, which had been realized by the sale of bonds, had been mis-

appropriated, and had not been applied to the purposes intended. If such sum is finally lost to the city, it will constitute no valid reason why the city should not provide for the payment of her just obligations. If, on the other hand, it shall be collected, it can be used in the redemption of the bonds proposed to be issued, or be devoted to other city purposes. We think the answer shows an indebtedness approximating the amount of the proposed issue of bonds.

In the act of 1871 (Acts 1871, p. 8) is the following provision: "The common council is hereby authorized to issue, and sell all such bonds of said city, as in their judgment may be necessary to carry out and perform any and all contracts heretofore made in and about the construction of such waterworks, and to fully complete said works."

It is manifest that the city was indebted for the construction of her water-works, and that she will have to expend further sums in the completion of such works. By the above act, ample power is conferred upon the common council to issue and sell bonds to carry out contracts already made and such as may be made to fully complete such works. The indebtedness being conceded, and the power admitted, it was within the sound discretion of the common council to collect the amount by taxation, or procure the same by the sale of the bonds of the city. There does not seem to have been any abuse of such discretion.

It is also objected that the bonds proposed to be issued were to bear ten per cent. interest. This is no objection.

By the act of March 7th, 1873 (Acts 1873, p. 63), the common council of any city engaged in establishing and constructing water-works for furnishing the city with wholesome water may, by a vote of two-thirds of the members of such council, issue the bonds of said city, bearing interest at any rate, not exceeding ten per cent., etc.

We think the matters stated in the second paragraph of the answer constitute a defence, and that the ruling of the court thereon was correct.

The judgment is affirmed, with costs.